**John W. FISHEL, Administrator of the Estate of Stephen T. Fishel, Deceased, Plaintiff–Appellant,**

v.

**AMERICAN SECURITY LIFE INSUR- ANCE CO., Defendant–Appellee.**

**No. 87–4186.**

United States Court of Appeals, Fifth Circuit.

Jan. 15, 1988.

Harry R. Allen, Mark W. Garriga, Bryan, Nelson, Allen, Schroeder & Cobb, Gulfport, Miss., for plaintiff-appellant.

Timothy D. Crawley, Alben N. Hopkins, Gulfport, Miss., for American Sec. Life Ins. Co.

Before CLARK, Chief Judge, JOLLY and JONES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The estate of Stephen T. Fishel appeals a jury verdict finding that the estate was not entitled to collect under a group employee insurance plan because Fishel had not qualified under the plan's definition of "employee," 660 F.Supp. 45. We affirm.

### I

Fishel worked for MPI as its in-house general counsel between 1981 and the fall of 1983. Starting in September 1983, Fishel went into the private practice of law in his own office, retaining MPI as a major client. He also had numerous other clients. Before opening his law office, Fishel had asked Wayne Skelton, comptroller of MPI, if Skelton could keep Fishel on MPI's group insurance plan from American Security Life (ASL) until Fishel was able to obtain insurance himself. Fishel had a health problem (he was a hepatitis carrier), which made staying on an insurance plan important. The group insurance plan had a conversion provision that allowed individuals on the plan to change to individual coverage without a medical examination when they left the group plan. Because Skelton allowed Fishel to stay on the group plan, Fishel did not exercise this conversion option.

Fishel received his last check designated as salary from MPI on September 2, 1983. After that, the checks he received from MPI were designated "for legal expense."

The ASL group policy coverage was specifically limited to employees of MPI. The policy "[a]grees to pay immediately upon receipt of due proof of the death, while insured hereunder, of any employee of the Employer, the amount for which such employee's life is insured...." The policy also provides that "the employee insurance of an employee shall automatically terminate immediately upon ... the date of his termination of employment with the employer or of his termination of membership within the eligible classes." Another provision states:

> An employee's termination of employment shall be deemed to have occurred upon cessation of his active work within the eligible classes, except that an employee who is ... employed on a part-time basis ... will nevertheless be considered as still employed within the eligible classes until the policyholder, acting in accordance with rules precluding individual selection, terminates the employee's insurance by notifying the insurance company to that effect, or by discontinuing premium payments for such insurance.

The policy further states:

> The policyholder (MPI) shall furnish periodically to the insurance company (American Security) such information relative to employees becoming insured, changes in amounts of insurance, and terminations of insurance as the insurance company may require for the administration of the insurance hereunder.... Failure to report the termination of insurance of any employee (shall not) be construed as involving or effecting the continuation of such insurance beyond the date of termination determined in accordance with the section entitled "Termination of Individual Insurance."

Finally, the policy's definition of "employee" is "a person directly employed in the regular business of and compensated for services by the employer."

The policy instructs the employee who has questions about the plan to "see your employer." Wayne Skelton testified that he thought Fishel fit into the "part-time employee" category.

In December 1983, Fishel, Carrol Malone, Jr. (the President of MPI), and his wife, Lolita Malone, went on a business trip to Marrero, Louisiana. On the return trip, the private plane carrying them crashed while attempting to land. Fishel and Carrol Malone died in the crash. The insurance clerk at MPI made a claim for benefits payable to Fishel's estate under the ASL group policy. ASL denied his claim.

## II

Fishel's estate filed a complaint in July 1985 seeking to recover combined policy proceeds of $100,000. In February 1986, ASL refunded Fishel's policy premiums for the three months preceding his death. The suit was tried in federal court, and the jury returned a verdict in favor of ASL, finding that Fishel did not fit the insurance policy's definition of "employee." The district court denied the estate's motions for judgment notwithstanding the verdict, or, in the alternative, for a new trial. The estate appealed, asserting that the district court should have granted a directed verdict in its favor because MPI was acting as ASL's agent when it allowed Fishel to stay in the group insurance plan, and therefore the insurance company was estopped from denying coverage because it had complete imputed knowledge of Fishel's employment situation; that the court should have granted a directed verdict because the insurance company had thus waived the forfeiture clause in the insurance contract; that the issues of agency waiver and estoppel should have been presented to the jury; that the trial court erred in admitting evidence of a prior lawsuit between Fishel and MPI; and that the verdict was against the substantial weight of the evidence.

## III

### A.

■ The Fishel estate's principal arguments center on the theory that MPI was acting as ASL's agent and that MPI's knowledge of Fishel's employment status must therefore be imputed to ASL. The estate then tries to show that because of this imputed knowledge, ASL either waived the clause limiting the policy to employees as defined in the policy, or is estopped from asserting this clause against Fishel's estate. We need not decide whether MPI was acting as ASL's agent because even if it were, the doctrines of waiver and estoppel cannot have the effect of extending policy coverage to additional subject matter. The Mississippi Supreme Court has consistently followed the general rule:

> [W]aiver or estoppel can have a field of operation only when the subject matter is within the terms of the policy and they cannot operate radically to change the terms of the policy so as to cover additional subject matter. Waiver or estoppel cannot operate so as to bring within the coverage of the policy property, or a loss, or a risk, which by the terms of the policy is expressly excepted or otherwise excluded. An insurer may be estopped by its conduct or knowledge from insisting on a forfeiture of a policy, but the coverage or restrictions on the coverage cannot be extended by the doctrines of waiver or estoppel.

*Employers Fire Ins. Co. v. Speed,* 133 So.2d 627, 629 (Miss.1961). The distinction has been clearly drawn that, "although an insurance company may be equitably estopped from insisting on a *forfeiture* of the policy, the doctrines of waiver and estoppel may *not* be used to *reform* an insurance contract to create a liability for a condition excluded by the specific terms of the policy." *Old Equity Life Ins. Co. v. Jones,* 217 So.2d 648 (Miss.1969); *Frank Gardner Hardware and Supply Co. v. St. Paul Fire & Marine Ins. Co.,* 245 Miss. 320, 148 So.2d 190, 193 (Miss.1963). It seems clear that extending the policy to a nonemployee, which the jury found Fishel in fact was, extends primary liability under this policy in a way that cannot be accomplished through waiver or estoppel. "[D]octrines of waiver and estoppel cannot be used to extend the coverage of an insurance policy

or create a primary liability, but may only affect rights reserved in it." *Frank Gardner*, 148 So.2d at 193. For example, in *Travelers Fire Ins. Co. v. Bank of New Albany*, 146 So.2d 351 (Miss.1962), Merita Johnson had taken out fire insurance on a mill. The specific mill was named in the contract. One of the provisions of the contract said that the mill had to remain occupied for the insurance to continue. The insurer, through its agent, knew that the mill had been unoccupied for some time but had continued to accept premiums under the policy. When the mill burned, the court held there that the insurance company had waived the occupancy clause by continuing to accept the premiums. This waiver did not "change the terms of the policy, so as to cover additional subject matter," *id.* at 354, because the specific mill was the subject matter of the policy, and the occupancy clause was only a condition. On the other hand, had the policy coverage been stated differently to cover only occupied buildings owned by Mrs. Johnson, to have claimed coverage of the unoccupied mill would have extended primary coverage, and the doctrine of waiver would not have sufficed to make the insurer liable. In this case, the insurance policy covered "employees." The jury found that Fishel was not an employee under the policy's definition. Waiver and estoppel are therefore insufficient to extend the policy to Fishel, a nonemployee, because such an extension includes a class of persons beyond the policy's primary coverage.

Finally, we reject the estate's contention that the issues of waiver and estoppel should have been submitted to the jury. If the jury had found Fishel was an employee, he would have been covered by the policy and the waiver and estoppel theories would have been irrelevant. If, as it did, the jury found that Fishel was not an employee and therefore not covered by the insurance policy, the waiver and estoppel theories are inapplicable as a matter of law. The trial court therefore did not err in failing to present these theories to the jury.

## B.

■ We find that the district court did not err in allowing testimony that, in a prior death-claim suit against MPI, Fishel's estate had argued that at the time of his death Fishel was not an employee under the Mississippi Workmen's Compensation Act. Fishel's estate, of course, did not want Fishel to fit the definition of employee under this statute because the estate would then be limited to that sole remedy against MPI, as an employer, for Fishel's wrongful death. The worker's compensation statute provides:

"Employee" means any person, including a minor, whether lawfully or unlawfully employed in the service of an employer or under any contract of hire or apprenticeship, written or oral, express or implied, provided that there shall be excluded therefrom all independent contractors and especially any individual performing servicing....

Miss.Code Ann. § 71–3–3(d) (1972). Fishel's estate argues that the only definition at issue in this case is the definition in the insurance policy that says:

The term "employee" means a person directly employed in the regular business of and compensated for services by the employer.

We agree that there are distinctions to be made between the definitions in the statute and the policy. However, we find the estate's characterization of Fishel as a nonemployee under the statute's definition sufficiently probative of whether he was an employee under the policy, so that it was within the discretion of the district court to allow the testimony in evidence. Because there was a question under the policy definition whether "being directly employed" excludes independent contractors such as outside lawyers who bill for their services, the district court may have concluded the earlier position Fishel's estate had taken on this matter was probative in this case. The estate argues that even if the evidence was probative, the district court nevertheless should have excluded it under Rule 403, Fed.R.Civ.P. because of the prejudicial effect on the jury in knowing that the estate had collected damages in a previous suit for Fishel's death. The district court care-

fully instructed the jury not to consider any amounts received from that first lawsuit in deciding this one. Thus, we do not find admission of this evidence to be reversible error.

### C.

■ Nor was the verdict of the jury that Fishel was not an employee against the great weight of the evidence. Indeed, it is hardly an overstatement to say that the evidence showed conclusively that Fishel was not directly employed by MPI at the time of his death. He had his own offices; he employed his own secretary; he had numerous other clients; he was not on MPI's payroll; he received no salary; and he billed MPI for his services. In short, the evidence seems to have demanded the verdict that was returned.

### IV

We find that the district court properly ruled on the waiver and estoppel theories argued by Fishel's estate because these doctrines will not suffice to extend an employee-insurance contract to a nonemployee, which Fishel was at the time of his death. The district court's refusal to submit these issues to the jury was therefore also correct since the questions presented were in this case matters of law. Nor did the district court abuse its discretion in allowing the jury to hear the position that Fishel's estate had taken in the prior lawsuit, because the estate's arguments in that suit were sufficiently probative to issues in this one. Finally, the jury's verdict was not against the great weight of the evidence as the estate asserts. For these reasons, the judgment of the district court is

AFFIRMED.